UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| CHRISTIAN BRYANT,<br><br>                    Petitioner,<br>   v.<br><br>DWIGHT NEVEN, *et al.*,<br><br>                    Respondents. | Case No. 2:15-cv-00486-APG-VCF<br><br>**ORDER** |

Before the court for a decision on the merits is a habeas corpus petition filed by Christian Bryant, a Nevada prisoner. ECF No. 5.

I.  BACKGROUND

In October 2011, a jury in the state district court for Clark County, Nevada, found Bryant guilty of robbery, battery with use of a deadly weapon, two counts of possession of a controlled substance, and escape. After a sentencing hearing, the state district court entered a judgment of conviction in December 2011, sentencing Bryant to concurrent terms ranging from 12 to 120 months on the first four counts with a consecutive sentence of 12 to 60 months on the escape count. An amended judgment of conviction was entered in March 2012.

1

Bryant appealed. In September 2012, the Nevada Supreme Court entered an order affirming the lower court's judgment.

In February 2013, Bryant filed a state habeas corpus petition in the state district court. After appointment of counsel, Bryant filed a supplemental petition. The court held an evidentiary hearing in March 2014, then entered an order denying the petition in April 2014. Bryant appealed. In December 2014, the Nevada Supreme Court entered an order affirming the lower court's judgment.

In March 2015, Bryant initiated this federal habeas corpus proceeding. In May 2015, this court screened Bryant's habeas petition under Rule 4 of the Rules Governing Habeas Corpus Cases Under Section 2254 and ordered service on the respondents. Respondents filed a motion to dismiss, alleging that Bryant failed to exhaust state court remedies for two of his four habeas claims.

This court granted the motion. Bryant subsequently abandoned the unexhausted claims. Respondents filed an answer to Bryant's remaining claims, which are now before the court for a decision on the merits.

II. STANDARDS OF REVIEW

Title 28 U.S.C. § 2254(d) provides as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court acts "contrary to" clearly established Federal law if it applies a rule contradicting the relevant holdings or reaches a different conclusion on materially indistinguishable facts. *Price v. Vincent*, 538 U.S. 634, 640 (2003). A state court

"unreasonably appli[es]" clearly established Federal law if it engages in an "objectively unreasonable" application of the correct governing legal rule to the facts at hand; however, Section 2254(d)(1) "does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error." *White v. Woodall*, 134 S. Ct. 1697, 1705–07 (2014). "And an 'unreasonable application of' [the Supreme Court's] holdings must be 'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *Wood v. McDonald*, 135 S. Ct. 1372, 1376 (2015) (per curiam) (citation omitted). "The question . . . is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

Habeas relief may not issue unless "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). As "a condition for obtaining habeas relief," a petitioner "must show that" the state decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. This standard is "difficult to meet," *Metrish v. Lancaster*, 569 U.S. 351, 357–58 (2013), as even a "strong case for relief does not mean the state court's contrary conclusion was unreasonable," *Richter*, 562 U.S. at 102. "[S]o long as 'fairminded jurists could disagree' on the correctness of the state court's decision," habeas relief is precluded by Section 2254(d). *Id.* at 101 (citation omitted). "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' ... and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations omitted).

The federal habeas court may deny a claim based on de novo review, because if the claim fails under a de novo standard, it must also fail under AEDPA's more deferential standard. *See Berghuis v. Thompkins,* 560 U.S. 370, 390 (2010) (where

claim fails under de novo review, state court's denial of claim must necessarily be found reasonable under AEDPA's more deferential standard).

III. DISCUSSION

*Ground II.*

In Ground II., Bryant alleges that his constitutional right to due process was violated because there was insufficient evidence presented at trial to support the battery with use of a deadly weapon conviction. Specifically, Bryant alleges that the beer bottle used to commit the battery does not qualify as a deadly weapon under the "inherently dangerous weapon" test propounded in *Zgombic v. State*, 798 P.2d 548 (Nev. 1990). He further alleges that evidence established that he struck the victim in self-defense, that he dropped the bottle as soon as it broke, and that there was no evidence that the victim was injured.

In presenting his insufficient evidence claim on direct appeal, Bryant focused on self-defense aspect of the claim. ECF No. 7-30. The Nevada Supreme Court denied the claim as follows:

> Appellant Christian Nathan Bryant contends that the evidence presented at trial was insufficient to support his conviction for battery with the use of a deadly weapon because he acted in self-defense. We disagree, and conclude that the evidence, when viewed in the light most favorable to the State, is sufficient to establish guilt beyond a reasonable doubt as determined by a rational trier of fact. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also Wilkins v. State*, 96 Nev. 367, 374, 609 P.2d 309, 313 (1980). Bryant was confronted by several individuals outside of a Las Vegas nightclub after a night of drinking. The group requested that Bryant return a purse that had gone missing from inside the club and was now visibly tucked into his waistband. Bryant told them to "back off" and attempted to walk away. When the group followed and continued to ask for the purse, [Bryant] picked up a glass bottle from the alleyway and struck Mike Walbey in the forearm as Walbey shielded his face. Bryant then fled the scene. Bryant contends that he felt threatened by the confrontation and acted in self-defense in his attack on Walbey, thereby negating the element of unlawfulness of matter with a deadly weapon. *See* NRS 200.481(1)(a).
>
> The jury could reasonably infer from the evidence presented that Bryant was not acting to defend himself when he struck Walbey, and that Bryant was the aggressor rather than the defender. It is for the jury to determine the weight and credibility to give conflicting testimony, and the

| | |
|---|---|
| 1 | jury's verdict will not be disturbed on appeal where, as here, substantial evidence supports the verdict. *See Bolden v. State*, 97 Nev. 71, 73, 624 P.2d 20, 20 (1981); *see also McNair v. State*, 108 Nev. 53, 56, 825 P.2d 571, 573 (1992). |

ECF No.7-32, p. 3-4.

The state court record supports each of the factual determinations by the Nevada Supreme Court. Specifically, the court's account of the incident is consistent with the testimony of three witnesses at trial – Walbey, the owner of the purse (Crystal Coruzzi), and another individual involved in the confrontation (Keith West). ECF Nos. 17-20 and 17-21. Thus, it cannot be said that the decision was based on an unreasonable determination of the facts for the purposes of § 2254(d)(2).

In addition, the Nevada Supreme Court correctly identified the "rational factfinder" standard established in *Jackson* as the federal law standard to test whether sufficient evidence supports a state conviction. *See Mikes v. Borg*, 947 F.2d 353, 356 (9th Cir. 1991). Under that standard, the court inquires as to "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (citation omitted). And because this court must review the Nevada Supreme Court's sufficiency of evidence determination under AEDPA, "there is a double dose of deference that can rarely be surmounted." *Boyer v. Belleque*, 659 F.3d 957, 964 (9th Cir. 2011). That means that even if this court "think[s] the state court made a mistake," the petitioner is not entitled to habeas relief unless the state court's application of the *Jackson* standard was "'objectively unreasonable.'" *Id*.

This court cannot conclude that the state court determination was unreasonable. There was sufficient evidence from which a rational factfinder could find beyond a reasonable doubt that Bryant did not act in self-defense when he struck Walbey with the bottle. Specifically, the unrefuted testimony of Walbey and West showed that Bryant could have ended the confrontation by simply returning Corruzi's purse and that, rather

than do so, he picked up a bottle and swung it at Walbey's head. ECF No. 7-21, pp. 27-29, 54.

Bryant's *Zgombic* argument is also off the mark. In *Zgombic*, the Nevada Supreme Court rejected the use of the functional test (in favor of the "inherently dangerous weapon" test) to define a "deadly weapon" for the purposes of Nev. Rev. Stat. § 193.165, which provides enhanced sentences for crimes committed with a deadly weapon. Recently, the Nevada Supreme Court addressed essentially the same argument Bryant is making here in a case where the defendant had been convicted of battery with a deadly weapon for using a screwdriver to stab a man in the neck. *See Rodriguez v. State*, 407 P.3d 771 (Nev. 2017). The court in *Rodgriguez* held as follows:

> *Zgombic* is inapposite for two reasons. First, *Zgombic* explicitly exempted statutes like NRS 200.481(2)(e) from its holding. *Id.* at 574, 798 P.2d at 550 ("We have no dispute with [ ] cases which use the functional test to define a deadly weapon when a deadly weapon is an element of a crime. Indeed, that is the interpretation generally followed in Nevada."). Second, five years after *Zgombic* was decided, our Legislature superseded its holding by amending NRS 193.165 to define "deadly weapon" according to *both* the inherently dangerous *and* the functional definitions. 1995 Nev. Stat., ch. 455, § 1, at 1431. The Legislature's rejection of *Zgombic* indicates its continued approval of the functional definition.
>
> . . .
>
> In sum, the Legislature intended "deadly weapon" within NRS 200.481(2)(e) to be interpreted broadly, according to both the functional definition and the inherently dangerous definition.
>
> . . .
>
> Therefore, the district court had discretion to determine which definition of "deadly weapon" was appropriate given the facts of this case. Given that a screwdriver clearly fails the inherently dangerous definition, the district court properly exercised its discretion in instructing the jury according to the functional definition.

*Rodriguez v. State*, 407 P.3d 771, 774 (Nev. 2017) (citation omitted).

As in *Rodriguez*, the trial court in this case instructed the jury using the functional definition:

> A deadly weapon is any object, instrument or weapon which is used in such a manner as to be readily capable of producing, or is likely to produce, death or great bodily injury.

ECF No. 7-24, p. 13. Testimony at trial established that Bryant swung the bottle at Walbey's head with sufficient force to shatter the bottle when Walbey blocked the blow with his forearm. ECF No. 7-21, pp. 27-29, 54. When viewing this evidence in the light most favorable to the prosecution, a rational trier of fact could find beyond a reasonable doubt that the beer bottle met the definition of deadly weapon even if Bryant dropped the bottle as soon as it broke. The fact that Walbey was not injured does not impact this conclusion. See *Hobbs v. State*, 251 P.3d 177, 180 (Nev. 2011).

Bryant also alleges under Ground II. that he received ineffective assistance of counsel, in violation of his constitutional rights, because trial counsel failed to demonstrate to the jury that the beer bottle was not a deadly weapon under the inherently dangerous test. As explained above, the inherently dangerous test did not apply to Bryant's trial. Thus, Bryant is unable to meet the prejudice standard necessary to establish that he received ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 695 (1984) ("The assessment of prejudice should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision.").

Ground II. is denied.

*Ground IV.*

In Ground IV., Bryant alleges that his constitutional rights to effective assistance of counsel and due process were violated because his trial counsel was burdened by a conflict of interest that adversely affected her performance. Bryant notes that, at his preliminary hearing, counsel notified the court that the Clark County Public Defender's office had previously represented the alleged battery victim, Walbey, in a criminal matter, but that Bryant was willing to waive any conflict for the purposes of the preliminary hearing. Bryant asserts that he did not waive the conflict for any other

purpose. He further alleges that, as a result of the conflict, counsel never interviewed Walbey prior to trial, did not cross-examine Walbey about his criminal record, and presented no defense witnesses.

The state district held an evidentiary hearing on this claim as part of Bryant's state post-conviction proceeding. ECF No. 7-40. On appeal, the Nevada Supreme Court addressed the lower court's denial of the claim:

> [A]ppellant Christian Nathanal Bryant contends that the district court erred by denying his claim that trial counsel was ineffective for proceeding to trial while a conflict in representation existed. Bryant claims that a conflict existed because the public defender's office represented one of the victims years before on a matter which resulted in a misdemeanor conviction and because the public defender to whom the case was originally assigned had a personal relationship with one of the witnesses.
>
> . . .
>
> At an evidentiary hearing, trial counsel testified that counsel to whom the case was originally assigned recognized the personal conflict and turned the file over without having done any work. Trial counsel further testified that she did not work at the public defender's office when it represented the victim, Bryant's case and the victim's case did not arise from the same set of facts and were not substantially related, her representation of Bryant was not limited by the office's duties to the victim as a former client, and she did not use any information from the victim's case during cross-examination of the victim because it was not admissible or because of a strategic decision. The district court concluded that there was no conflict of interest. We agree and conclude that the district court did not err by denying this claim. See *Clark v. State*, 108 Nev. 324, 326, 831 P.2d 1374, 1376 (1992) (explaining that a defendant must demonstrate "[a]n actual conflict of interest which adversely affect[ed] a lawyer's performance"); *see also Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980).

ECF No. 7-46, p. 2-4.

The Sixth Amendment right to counsel includes the right to counsel of undivided loyalty. *Wood v. Georgia,* 450 U.S. 261, 272 (1981). In *Sullivan*, the Court held that, where a defendant alleges a Sixth Amendment violation based on counsel's divided loyalty, he "must establish that an actual conflict of interest adversely affected his lawyer's performance." *Sullivan*, 446 U.S. at 350. Although a defendant "need not demonstrate prejudice," he must prove that "counsel actively represented conflicting

interests." *Id.* at 349–50. The mere "possibility of conflict is insufficient to impugn a criminal conviction." *Id.* The Supreme Court has defined an "actual conflict" by the effect a potential conflict had on counsel's performance. *Mickens v. Taylor,* 535 U.S. 162, 171 (2002).

Here, the Nevada Supreme Court's determination that an actual conflict did not exist was eminently reasonable. At the evidentiary hearing in state court, Bryant's counsel testified to the following facts. She was not working in the public defender's office when the office represented Walbey and had never seen Walbey's file. ECF No. 7-40, p. 10-12. The only things she knew about Walbey's case were the original charges and the disposition. *Id.*, p. 12. Because Walbey had entered a plea to a misdemeanor, the prior conviction could not be used for impeachment purposes. *Id.*, p. 13. And, while Walbey had been charged with a violent crime in the previous case, counsel did not ask him about his propensity for violence because doing so would have "opened the door" to the prosecutor presenting similar evidence about Bryant. *Id.*, p. 15. In summary, there is no evidence that counsel's performance was adversely affected by the public defender's office prior representation of Walbey.

Because Bryant has not demonstrated the existence of an actual conflict, this court must defer to the Nevada Supreme Court's denial of his claim. S*ee Mickens,* 535 U.S. at 174 (denying habeas relief where petitioner failed to demonstrate that alleged conflict of interest adversely affected his counsel's performance where counsel was representing murder victim at the time of the murder).

Ground IV. is denied.

IV. CONCLUSION

Based on the foregoing, Bryant's petition for federal habeas relief shall be denied.

*Certificate of Appealability*

This is a final order adverse to the petitioner. As such, Rule 11 of the Rules Governing Section 2254 Cases requires this court to issue or deny a certificate of

appealability (COA). Accordingly, the court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id.*

Having reviewed its determinations and rulings in adjudicating Bryant's petition, the court declines to issue a certificate of appealability for its resolution of any procedural issues or any of Bryant's habeas claims.

**IT IS THEREFORE ORDERED** that the petition for writ of habeas corpus (ECF No. 5) is DENIED. The Clerk shall enter judgment accordingly.

**IT IS FURTHER ORDERED** that a certificate of appealability is DENIED.

Dated: April 23, 2018.

_____
UNITED STATES DISTRICT JUDGE